**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**WILLIE JONES (#573876)**                         **CIVIL ACTION NO.**

**VERSUS**                                                     **23-53-BAJ-EWD**

**KEENAN LETCHER, ET AL.**

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 6, 2024

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILLIE JONES (#573876)**                                          **CIVIL ACTION NO.**

**VERSUS**                                                                              **23-53-BAJ-EWD**

**KEENAN LETCHER, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint of Willie Jones ("Plaintiff"), who is representing himself and who is confined at the Louisiana State Penitentiary in Angola, Louisiana.[1] Based on the screening permitted by 28 U.S.C. § 1915(e), and required by 28 U.S.C. § 1915A, it is recommended that Plaintiff's claims against Tim Hooper and the claim for deliberate indifference to a serious medical need against Keenan Letcher be dismissed without prejudice to Plaintiff's right to amend, that Plaintiff's claim regarding violation of prison rules/regulations be dismissed with prejudice, that the Court decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims, and that this matter be referred for entry of a scheduling order on Plaintiff's remaining claim (*i.e.*, Plaintiff's individual capacity claim against Keenan Letcher for money damages for the alleged use of excessive force on June 2, 2021).

**I.    BACKGROUND**

Plaintiff filed this civil rights lawsuit on or about January 27, 2023 against Keenan Letcher and Tim Hooper (together "Defendants") alleging violations of Plaintiff's Eight Amendment rights. He requests monetary, injunctive, and declaratory relief.[2]

---

[1] R. Docs. 1. Jones filed an amended complaint on or about March 20, 2023. R. Doc. 4. The amended complaint is identical to the original complaint, except that the amended complaint is signed, as required.
[2] R. Doc. 4, pp. 4-5 & 7.

## II.    LAW & ANALYSIS

### A.  Standard of Review

This Court is authorized to dismiss a claim by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[3]  The screening process gives the court the ability to separate those claims that may have merit from those that lack a basis in fact or in law.  Dismissal of any claim that does not pass screening may be made before service of process or before any defendant has answered.  Plaintiff has sued prison employees, so his claims are subject to the screening process.

To determine whether a complaint fails to state a claim for purposes of screening under §§ 1915(e) and/or 1915A, courts apply the same standard used for dismissal under Fed. R. Civ. Proc. 12(b)(6).[4]  This means the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[5]  To survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]  For a complaint to

---

[3] 28 U.S.C. §1915(e) provides for dismissal of claims that are frivolous, malicious, or fail to state a claim where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"), which means without prepaying the filing fee.  28 U.S.C. §1915A provides for dismissal of claims by prisoners against a governmental entity or employee of a governmental entity for the same reasons regardless of the pauper status of the plaintiff.  Jones was granted IFP status on March 20, 2023, so both statutes apply.  R. Doc. 6.
[4] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6)).
[5] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[7] *Id.*

2

survive dismissal, it must contain enough factual information to raise a reasonable expectation that discovery will provide evidence of each element of the plaintiffs' claim.[8]

### B. Jones has Stated an Excessive Claim Against Letcher[9]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[10] Although "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury,"[11] cruel and unusual punishment under the Eighth Amendmentdoes not include *de minimis* uses of physical force (in other words uses of force so minor they do not merit consideration), as long as the force used is not "repugnant to the conscience of mankind."[12] Factors to be considered in deciding whether force is excessive include the extent of injury sustained,[13] if any; the need for the use of force; the relationship between the need for force and the amount of force used; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[14]

Plaintiff says that he was awakened in the middle of the night by Letcher and, although Plaintiff was following orders, Letcher sprayed him with so much chemical agent that Letcher

---

[8] *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 255-57 (5th Cir. 2009).
[9] Letcher is only sued in his individual capacity for compensatory and punitive damages. R. Doc. 4, p. 7. Though Jones states that another officer should have intervened, he did not name that officer as a defendant, so the Court does not read the complaint as attempting to state a claim for failure to intervene. R. Doc. 4, p. 10 ("The other correctional officer should have at leased [sic] attempted to stop Lt. Letcher…. But he did nothing."). The officer Plaintiff is referring to also may not have been close enough to intervene because Jones alleges Letcher called for the "other officer to let him off the tier," which suggests that officer was not near Letcher or Jones but was, instead, near the controls for the doors. R. Doc. 4, p. 8. *See Drumm v. Valdez*, No. 16-3482, 2019 WL 7494443, at *6 (N.D. Tex. Dec. 3, 2019) (dismissing failure to intervene claim as frivolous; even if the guard witnessed the attack live by video surveillance no facts indicated he was close enough to have the opportunity to intervene).
[10] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[11] *Wilkins*, 559 U.S. at 38.
[12] *Hudson*, 503 U.S. at 10.
[13] Though extent of injury is a factor to consider in determining whether excessive force was used, no arbitrary amount of injury is required to maintain an excessive force claim. *Wilkins*, 559 U.S. at 39.
[14] *Id.* at 7.

3

"gagged and yelled at the other officer to let him off the tier."[15] Plaintiff specifically alleges that he was in full belt restraints and compliant with Letcher's orders.[16] These allegations are enough to state a claim for excessive force—even though a restrained, compliant inmate was following orders, force was used against him.[17] Accordingly, Plaintiff's claim for monetary relief against Letcher in his individual capacity should proceed.

### C. Plaintiff has Not Stated a Claim for Deliberate Indifference against Letcher

It appears Plaintiff may be attempting to state a claim for deliberate indifference to a serious medical need resulting from the use of the chemical agent, as he alleges "Letcher knew of my no chemical duty status and deliberately used mace to punish me…."[18] However, at this time, the allegations fall short of stating a claim in this regard because Plaintiff has only alleged in a conclusory fashion that Letcher knew of his no chemical medical duty status. Plaintiff does not allege any facts to support his statement about Letcher's knowledge. For a prison official to act with deliberate indifference, he must be both aware of facts from which an inference may be drawn that a substantial risk of serious harm exists to an inmate, and the official must draw that inference.[19] Because there are no facts in the complaint to show Letcher's knowledge, Plaintiff's deliberate indifference claim should be dismissed without prejudice and he should be given leave to amend to provide facts, if any, that show Letcher knew Plaintiff was an asthmatic and/or

---

[15] R. Doc. 4, p. 8.
[16] *Id*.
[17] *See Aucoin v. Cupil*, No. 16-373, 2018 WL 1547347, at *3 (M.D. La. Mar. 29, 2018) (noting that "at the time of the incident, it was clearly established that inmates have a constitutional right to be free from the use of excessive force, and it is objectively unreasonable to assault a compliant and restrained inmate."). Though the Court cannot address qualified immunity on screening, the rationale of *Aucoin* coupled with the fact that the complaint is verified (R. Doc. 4, p. 15) likely forecloses the qualified immunity defense on a motion to dismiss.
[18] R. Doc. 4, p. 10.
[19] *Farmer v. Brennan*, 511 U.S. 825 (1994).

particularly susceptible to health impacts from a chemical agent exposure and/or had a no chemical duty status. Conclusory statements are not enough to state a claim.[20]

### D. Plaintiff Has Not Stated a Claim Against Hooper[21]

Plaintiff admittedly named Hooper because of his supervisory role as "Head Warden" of LSP, describing Hooper's liability as stemming from "improper or ineffective methods of oversight."[22] Supervisory officials may be held liable under § 1983 only if they actively participate in acts that cause the constitutional violation or implement unconstitutional policies that cause plaintiff's injury.[23] Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is, alone, not enough to state a claim under §1983.[24] As discussed above, Jones has stated a claim against Letcher for excessive force, so the Court must resolve whether Jones has also stated enough facts to demonstrate that Hooper may be liable for Letcher's constitutional violation.

#### 1. Policy or Custom

Individual supervisory officials may be held liable for implementing a policy that is the moving force behind a constitutional violation. The plaintiff must identify the specific policy and

---

[20] Plaintiff cannot simply state Letcher had this knowledge. Rather, he must provide facts to show how Letcher knew. Facts that may be enough to show Letcher knew of Plaintiff's sensitivity to chemical agent may include information that Letcher previously requested medical help for Plaintiff's asthma attacks or that Plaintiff told Letcher of his status.
[21] Hooper is only sued for declarative and injunctive relief, and it appears is only sued in his official capacity as "Head Warden." R. Doc. 4, p. 7. To the extent Plaintiff intended to sue Hooper for injunctive relief in his individual capacity, such a claim would be subject to dismissal as frivolous. *See Grady v. El Paso Community College*, 979 F.2d 1111, 1113 (5th Cir. 1992); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990) (noting that the injunctive relief sought, which included expungement of a portion of a written reprimand, could only be obtained by the defendants in their official capacities); *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) (claim for injunctive relief against a state official only available against the official in his or her official capacity).
[22] R. Doc. 4, p. 7.
[23] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).
[24] *See Iqbal*, 556 at 676, citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability.").

5

explain how the policy amounted to denial of constitutional rights.[25] Plaintiff speculates that there may "exist a failed supervisory policy or practice of maintaining on the person unsecured or, unauthorized and unregulated use of level two chemical weapons," but does not allege that Hooper is responsible for a written policy that is the moving force behind the constitutional violations Plaintiff complains about.[26] Rather, the speculation appears to be that a policy may exist to prevent this type of chemical agent use, but that policy has failed. When there is no written policy, only an unstated rule or policy, a plaintiff must show that the challenged acts or omissions were sufficiently extended or persistent, or otherwise typical of extended or persistent misconduct by other officials, to prove an intended condition or practice.[27]

When there is a risk to inmate health or safety that is so longstanding and persistent that prison officials must have been aware of this danger, a plaintiff may state a claim based upon the existence of a custom or unstated policy.[28] Jones's conclusory allegations, such as the "[u]se of chemical mace as happened in this incident have been going on for years and high-ranking officials either have chosen to ignore the complaints or assisted in the cover up of such behavior;"[29] that "there exists a widespread and prevalent practice of ranking officials partaking in similar such behavior;" "excessive spraying of mace is a common practice at L.S.P.;" and that numerous

---

[25] *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Spiller v. City of Texas City Police Department*, 130 F.3d 162, 167 (5th Cir. 1997); *Prescott v. Johnson*, No. 18-577, 2022 WL 672694, at *12 (E.D. Tex. March 7, 2022) ("the plaintiff must identify specific policies and explain how those policies amounted to a repudiation of constitutional rights and were the moving force behind the alleged violation.").
[26] R. Doc. 4, p. 9.
[27] *See Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 465 (5th Cir. 2015), quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996) (internal quotation marks omitted).
[28] Though often discussed in cases involving pretrial detainees, a supervisory official may also be liable under § 1983 for customs or unstated policies in place at institutions that house convicted prisoners. *See Adames v. Perez*, 331 F.3d 508, 511-512 (5th Cir. 2003) (discussing treatment of a convicted inmate noting that if the risk to inmate health or safety was so longstanding and pervasive that the official had to have been aware of the danger, then subjective knowledge of the serious risk may be found). A plaintiff may rely on circumstantial evidence to indicate a defendant was subjectively aware of a risk to inmate health or safety. *Id.* at 512. Acceptable circumstantial evidence may include evidence that "the risk to inmate health or safety was so longstanding and pervasive that the official must have been aware of this danger." *Id.*, citing *Farmer*, 511 U.S. at 842-43.
[29] R. Doc. 4, p. 10.

6

grievances and suits have been filed regarding the unnecessary use of chemical spray,[30] are insufficient to establish that the risk to inmate health or safety was so longstanding and pervasive that Hooper must have been aware of this danger.[31] Because Plaintiff has not alleged facts to show that the unnecessary use of chemical spray was so longstanding and pervasive that Hooper must have been aware of it, nor that Hooper was actually aware of it, Plaintiff has failed to state a federal claim;[32] however, it is recommended that Plaintiff be given leave to amend his complaint to provide additional facts as to Hooper's knowledge, if possible.[33]

### 2. Failure to Train or Supervise

Plaintiff's failure to train or supervise claim against Hooper is also subject to dismissal. To hold a defendant supervisor liable on a theory of failure to train or supervise, the plaintiff must show (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link

---

[30] R. Doc. 4, pp. 10-11.
[31] *See Doughty v. Vannoy*, No. 20-117, 2020 WL 6054930, at *4 (M.D. La. Sept. 25, 2020) (finding that conclusory allegations of microwaves being used for attacks were insufficient to demonstrate a custom); *Washington v. Cain*, No. 10-18, 2010 WL 3724516, at *4 (M.D. La. Aug. 17, 2010) (the fact that the warden's office may have processed administrative grievances was insufficient to alert the warden to a potential constitutional claim); *Brooks v. Bell*, No. 17-18, 2019 WL 1110132, at *1 (E.D. Tex. March 9, 2019) (broad and conclusory allegations that defendants must have known of the alleged constitutional violations insufficient to state a claim against supervisory officials).
[32] *See Johnson v. Epps*, 479 Fed.Appx. 583, 590-91 (5th Cir. 2012) (discussing the necessity that a supervisor be subjectively aware of a constitutional violation to bring a claim for injunctive relief); *Bernard v. Cain*, No. 16-12, 2016 WL 6662740 at *2 (M.D. La. Oct. 6, 2016) (requiring subjective knowledge regardless of the relief sought— "the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief."); *Lewis v. Cain*, No. 15-318, 2021 WL 1219988, at *19-20 (M.D. La. March 31, 2021) (discussing subjective knowledge requirement when only injunctive relief is sought). *See also Prescott*, 2022 WL 672694, at *12 (dismissing claims against supervisors because the plaintiff did not point to a specific written policy or "any other incidents showing the existence of an alleged policy or custom actually created by" the defendants).
[33] Plaintiff has not put forth any allegations about Hooper's actual knowledge, and although an inmate may rely on circumstantial evidence to demonstrate knowledge, for example, by showing that the conduct or occurrences were "'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,'" *see Anderson v. Wilkinson*, 440 Fed.Appx. 379, 381–82 (5th Cir. 2011), citing *Farmer*, 511 U.S. at 834, conclusory allegations will not suffice. *See also, Taylor v. Williams*, 715 Fed.Appx. 332, 337 (5th Cir. 2017), citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). For example, for circumstantial evidence to demonstrate pervasiveness, Plaintiff can give additional information regarding other inmates he believes have also been subjected to unnecessary use of chemical spray, including the details and dates of those incidents. To the extent Plaintiff claims "ranking officials" have ignored the outcome of suits involving the unnecessary use of chemical spray on inmates (R. Doc. 1, p. 12), Plaintiff can cite to particular cases to support this statement, and whether Hooper is one of those officials. Plaintiff made the same claim against Hooper before, and that claim was also dismissed for the same reasons. *See Jones v. Gooden*, No. 21-372, 2022 WL 1286231 (M.D. La. Feb. 25, 2022).

exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.[34] Conclusory allegations of failure to train or supervise are insufficient to set out a constitutional claim.[35] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[36] A supervisory official is deliberately indifferent only when the inadequate training is so obvious that a constitutional violation would almost always result.[37] Indeed, a plaintiff alleging a failure to train must show a pattern of similar violations.[38]

Plaintiff's claim against Defendant for failure to train or supervise suffers from the same deficiencies as his claim regarding the existence of a policy or custom—he has failed to allege with enough specificity a pattern of similar violations such that the inadequate training was so obvious that a constitutional violation would almost always result. Accordingly, this claim is also subject to dismissal, with a recommendation for leave to amend.

### E. Leave to Amend

As indicated above, Plaintiff should be allowed to amend to try to state a claim for deliberate indifference against Letcher and a claim against Hooper for a policy or practice of allowing the unnecessary use of chemical agent against inmates/failing to supervise officers use of chemical agent because "[o]rdinarily, a *pro se* litigant should be offered an opportunity to amend

---

[34] *Prado v. Grounds*, No. 14-130, 2015 WL 7574761, at *3–4 (E.D. Tex. Oct. 5, 2015), *report and recommendation adopted*, 2015 WL 7575915 (E.D. Tex. Nov. 25, 2015), (citing *Brauner v. Coody,* 793 F.3d 493, 501 (5th Cir. 2015)); *Burge v. St. Tammany Parish,* 336 F.3d 363 (5th Cir.2003), *cert. denied,* 540 U.S. 1108 (2004).
[35] *Id.,* citing *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir .2005).
[36] *Thompson v. Upshur County,* 245 F.3d 447, 459 (5th Cir. 2010).
[37] *Sewell v. LeBlanc*, No. 11-780, 2012 WL 528217, at *3 (M.D. La. Jan. 26, 2012), *report and recommendation adopted*, 2012 WL 528197 (M.D. La. Feb. 16, 2012).
[38] *Thompson,* 245 F.3d at 459*; Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005).

8

his complaint before it is dismissed."³⁹ "Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case."⁴⁰ With regard to these claims, it is not certain that Plaintiff has pleaded his "best case." If he has facts to demonstrate that Letcher had knowledge of Plaintiff's medical duty status restricting the use of chemical agents and/or to establish that Hooper was actually aware of incidents of unnecessary use of chemical agent or that such incidents were sufficiently longstanding and persistent, he may be able to state a claim. Accordingly, these claims should be dismissed without prejudice to the right to file an amended complaint that cures, if and where possible, the deficiencies outlined in the Report.⁴¹

### F. Plaintiff Cannot State a Claim for Alleged Violations of Prison Rules/Regulations

To the extent Plaintiff argues that Letcher's conduct violated prison rules,⁴² this does not state a claim of constitutional dimension. Prison rules and policies do not create federally protected rights, so a failure to follow those rules or policies does not establish a violation of a constitutional right. Accordingly, Plaintiff cannot state an independent federal claim against any defendant for alleged violation of prison policies.⁴³

---

³⁹ *Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (internal quotation marks omitted).
⁴⁰ *Id.*
⁴¹ Plaintiff filed a letter on or about April 2, 2024 alleging he was retaliated against on March 25, 2024 because he is "known as [a] filer." R. Doc. 9, p. 1. He alleges officers, whom Plaintiff does not name, "gassed" him and filed false disciplinary charges against him. R. Doc. 9, p. 1. Plaintiff is advised that he will not be allowed to amend this suit to add the claims included in this letter for two reasons: (1) these claims would be improperly joined in this action under Federal Rules of Civil Procedure 18 and 20; and (2) allowing would be futile because the claims are subject to dismissal since they are unexhausted pursuant to 42 U.S.C. § 1997e. The incidents complained of in the letter happened after the filing of this suit. If Plaintiff wishes to bring claims for the incidents occurring in March 2024 noted in the letter, he should file a new suit.
⁴² Plaintiff alleges that "it seems that Regulatory mechanisms were deliberately flouted…." R. Doc. 4, p. 9.
⁴³ *Lewis v. Secretary of Public Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal citations omitted)). *See also Humphrey v. Banks*, 777 Fed.Appx. 767, 768 (5th Cir. 2019) (the plaintiff "has not shown that the district court erred by dismissing for failure to state a claim his claim that prison officials violated an internal policy by assigning him to a unit that housed gang-affiliated inmates. Violations of prison rules or regulations, without more, do not give rise to a cause of action.").

### G. Exercise of Supplemental Jurisdiction Should be Declined

To the extent Plaintiff's allegations may be interpreted as asking the Court to exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[44] District courts are afforded "wide latitude" in their disposition of state law claims,[45] and "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."[46] Having recommended that all federal claims except the excessive force claim discussed above be dismissed, it is further recommended that the Court decline to exercise supplemental jurisdiction over any potential state law claims, as any state law claim related to the excessive force claim would require a wholly different analysis.[47]

### RECOMMENDATION

**IT IS RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims; that the claims of Plaintiff Willie Jones for violation of prison rules be **DISMISSED WITH PREJUDICE**, that Jones's claim against Timothy Hooper, as well as his claim against Keenan Letcher for deliberate indifference, be **DISMISSED WITHOUT PREJUDICE** to Jones's right to file an amended complaint within twenty-one (21) days of the

---

[44] 28 U.S.C. § 1367.
[45] *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011), quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).
[46] *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989))).
[47] For example, the likely state law claim would be for battery, which requires a wholly separate analysis from the excessive force claim.

Ruling adopting this Report and Recommendation; and that this matter be referred to the undersigned for further proceedings on Jones's remaining claim (*i.e.* his claim for monetary relief against Letcher in his individual capacity for the act of excessive force occurring on June 2, 2021).

Signed in Baton Rouge, Louisiana, on September 6, 2024

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**